WILLIAM MONTGOMERY, Respondent, *v.* SARAH C. HUMPHREY et al., as Executors of MORRIS SAMTER, Deceased, Appellants.

SARAH C. HUMPHREY, Respondent, *v.* SARAH C. HUMPHREY et al., as Executors of MORRIS SAMTER, Deceased, Appellants.

EMILY MONTGOMERY, Respondent, *v.* SARAH C. HUMPHREY et al., as Executors of MORRIS SAMTER, Deceased, Appellants.

Third Department, July 8, 1954.

*Charles W. Jenkins* and *Henry Hirschberg* for appellants.

*N. Le Van Haver* for respondents.

BERGAN, J. The sudden and unexplained plunging of an automobile from a highway does not alone make out a case of negligence under the authority of *Galbraith* v. *Busch* (267 N. Y. 230); but the application of that case requires the happening of the accident to rest in a factual vacuum.

If the occurrence has added to it sufficient other ingredients from which a reasonable inference of the driver's control of the event and a lack of care could be drawn, it is proper to allow the jury to deduce the inference. In the *Galbraith* case the automobile "suddenly swerved from the highway and crashed into a tree" and the evidence did not disclose "any cause" for the sudden swerve. (P. 232.) The suddenness of the swerve and the lack of any demonstrable part played by the driver as a factor in the occurrence are what made it possible to say so confidently in that case as a matter of law that no "cause" of the accident had been shown.

But the rule in that case ought not to be applied where there is a factual margin in the proof allowing an inference of inattention or an absence of due care in keeping a car running on its own path in a highway. Where it can reasonably be found that the driver permitted the vehicle to move in a direction of danger which he could have seen, controlled and prevented, the question must be left to the jury to find one way or the other.

Time and circumstance mark off the controlling differences in the application of this as well as other legal rules. The solution given in *Galbraith* v. *Busch* (*supra*) is not to be applied automatically every time a vehicle swerves in a highway and has a collision.

In the case before us we think the question of negligence was for the jury. The vehicle in which the three plaintiffs were passengers was being driven by Morris Samter, now deceased, in a northerly direction on Route 9W near Port Ewen. Crossing over the highway from its own right side where it had been proceeding, it collided on the west side of the highway with another vehicle which was proceeding south.

The most complete observation of the actual course of the Samter car was made by the driver of the other car, Herbert E. Justesen. He observed of the Samter car that it "started to bear out into the center lane". He added that "even at that I didn't become alarmed immediately" but that "when I saw he was going to cross all the way across the center lane, bear across the lane, I tried to swerve my car to the left".

This description of events by one who was observing them closely as they occurred suggests that there was adequate time for Mr. Samter to have observed his drift toward the left into the center of the road, and his continued drift beyond the center farther to the left of the road.

The other driver had sufficient time to form the judgment at first that the Samter car would not get beyond the center, i.e., "I didn't become alarmed immediately"; and he had time to attempt physically to make a change in the direction of his own automobile when he saw the Samter car continue to "bear" beyond the center of the road and come into the lane on the west side.

This may well have happened all very quickly as appellant argues; but if the driver Justesen had opportunity to make the successive observations of increasing danger and to form successive judgments about the gravity of the danger, it is not unreasonable to allow the jury to say that Mr. Samter had the same time and opportunity to observe and to form judgments and to act accordingly. The failure to observe the drift of his car into the wrong lane and to correct it in time to have prevented the accident was sufficiently brought home to Mr. Samter under the proof in the case as to be treated as negligence.

The further description of events by Mr. Justesen is in similar vein. This was not so sudden an event that no man could be expected to do anything about it. The witness described the Samter car as "just bearing across the road" until "he was in the far south lane".

On cross-examination counsel took the pattern of *Galbraith* to frame a question. The witness was asked whether it was a fact that the Samter car "suddenly shot on across onto your side of the road and collided with you?", to which the witness gave a clear, categorical answer, "No, sir."

That there was, indeed, opportunity for Mr. Samter to have controlled his car had he been using the vigilance which driving on that road then required is suggested by a statement which Mr. Samter made to a friend while he was waiting for treatment at the hospital. The statement, as attributed to him, was: "Oh, my God. I am sick. It was all my fault, it was all my fault."

It is true enough that in form it is conclusory language and not literally an admission of a pure "fact"; but it is the kind of statement concerning a mental process of the driver which a jury might regard as indicating that Mr. Samter had sufficient awareness of the danger and control of the car to have done something about it. We think the record is thus open on the question of negligence.

The judgments should be affirmed, with costs.

FOSTER, P. J., COON, HALPERN and IMRIE, JJ., concur.

Judgments affirmed, with costs.