GRACE T. COLE, as Administratrix of the Estate of GEORGE W. COLE, Deceased, Respondent, *v.* CHARLES SWAGLER, as Administrator of the Estate of EUGENE SWAGLER, Deceased, Appellant.

Argued January 18, 1955; decided March 11, 1955.

*Reid S. Moule* and *Lowell Grasse* for appellant. I. As a matter of law plaintiff has not presented a prima facie case of negligence by showing, without further explanation, that a car owned by defendant's intestate had left the road and collided with some trees. (*Wank* v. *Ambrosino*, 307 N. Y. 321; *Galbraith* v. *Busch*, 267 N. Y. 230; *Lahr* v. *Tirrill*, 274 N. Y. 112; *Towne* v. *Bunce*, 283 App. Div. 847, 307 N. Y. 868; *Hammond* v. *Hammond*, 227 App. Div. 336; *Foltis, Inc.*, v. *City of New York*, 287 N. Y. 108; *Griffen* v. *Manice*, 166 N. Y. 188; *Curley* v. *Ruppert, Inc.*, 272 App. Div. 441; *Wetsell* v. *Reilly*, 159 App. Div. 688.) II. As a matter of law plaintiff has failed to establish that there was any negligence on the part of defendant's intestate. (*Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90; *People* v. *Harris*, 136 N. Y. 423.)

*Emil L. Cohen, Nathan A. Weiss* and *Norman B. Lewis* for respondent. I. The physical facts clearly warranted the finding of the jury that defendant's intestate was the driver of the death car. (*Towne* v. *Bunce*, 307 N. Y. 868.) II. The physical

facts clearly warranted the jury in finding that the driver of the death car was negligent in driving at an excessive rate of speed or without having the car under proper control, or both. (*Betzag* v. *Gulf Oil Corp.*, 298 N. Y. 358; *Dunham* v. *Village of Canisteo*, 303 N. Y. 498; *Stubbs* v. *City of Rochester*, 226 N. Y. 516; *Noseworthy* v. *City of New York*, 298 N. Y. 76; *Jones* v. *Liberty Fast Freight Co.*, 280 App. Div. 935; *Allen* v. *Ennis*, 253 App. Div. 769; *Gadd* v. *Universal Road Mach. Co.*, 263 App. Div. 456; *Di Carlo* v. *Feldman*, 246 App. Div. 682; *Montgomery* v. *Humphrey*, 284 App. Div. 365.)

FROESSEL, J. On December 20, 1952, at about 3:30 A.M., the weather being clear and the pavement dry, a Hudson automobile owned by defendant's intestate was proceeding easterly along Lake Shore Road, a four-lane highway in Erie County, in the direction of Buffalo. It overtook and passed a patrol car in which two local deputy sheriffs were traveling at twenty-five or thirty miles an hour. Neither of the deputies was asked to estimate the speed of the Hudson car. One of them testified that he observed no other cars immediately behind or in front of the Hudson, and that none was traveling in the opposite direction.

After the Hudson had passed, the deputies continued at the same speed for a mile or a mile and a half, when they were stopped by a woman waving her arms [she was never identified], standing at the roadside in her nightgown shouting "They're killed". They stopped and found the same Hudson car that had passed them resting in the field about ten feet from the edge of the road, on the right side. The car was "sheered right in half", with only wires and cables still connecting the front and rear halves; the front lights were still lit. The right-hand door of the car had been torn off. Beyond this, however, there was no evidence of the relative positions in which the door and the two halves of the car came to rest. The condition of the car's tires, steering gear, brakes and other safety equipment was similarly undisclosed.

By the time the deputies arrived on the scene, Dr. Olson, who lived on the adjoining property, was already there, having been

summoned from his bed by the ringing of his doorbell. The person who summoned Dr. Olson was never identified. The doctor testified that he had hurried to his neighbor's property — the neighbor was not further identified — and there found two men lying in and about the wrecked automobile.

Swagler, defendant's intestate, was lying on the ground outside the left forward section of the car with one foot '' wedged up '' between the bottom of the partly open left front door and the running board. Cole, plaintiff's intestate, was found inside the car to the right of the steering wheel with his buttocks seated on the right side of the car. Cole's feet, according to Dr. Olson, were '' to the right of the mid-line of the car ''. He agreed that the feet were '' where a passenger's feet would be ''. Only the uppermost portion of Cole's body was slouched to the left onto the driver's seat.

With the aid of one of the deputies, Dr. Olson removed Cole's body from the car. The county medical examiner arrived shortly thereafter and found Cole dead. He testified that Cole's fatal injuries included, among other things, a broken neck, a fractured skull, a crushed chest, a small laceration of the right eyelid, ecchymosis with swelling of the right eye, contusion of the bridge of the nose, and a laceration of the left shin.

Swagler, however, was found to be still alive, though unconscious and badly injured. One of the deputy sheriffs attempted to question him on details of the accident, but Swagler held his hands over his smashed face and repeatedly made only a '' small sound '' which the deputy understood as '' George '' — the first name of plaintiff's intestate.

Although Swagler also mumbled '' George '' after the deputy asked him which one of them had been driving the car, little significance need be attached thereto for Swagler continued to mumble '' George '' even when asked such further questions as '' Were any children '' — or ladies — '' in the car? ''. Indeed, as Deputy Sheriff Olday described it, Swagler '' mumbled and he had his hand over his face; very low. It wasn't clear ''. An

ambulance was called and Swagler was removed to the hospital where he died three days later. The hospital record showing the nature of his injuries was not offered in evidence.

Deputy Sheriff Leszczynski measured the path [the course was not given] traveled by the car after leaving the highway and fixed the distance at 177 feet. While the order in which the car encountered various obstacles after leaving the road is not clear from the testimony, it is undisputed that two trees were struck by the car — one about twenty feet from the point of departure and another somewhat beyond the first. The vehicle also passed through some bushes. The car had uprooted the smaller of the two trees, six inches in diameter, and had stripped the bark from the other, sixteen inches in diameter. The grade and nature of the terrain over which the car passed was not given.

The foregoing is substantially the relevant evidence introduced at the trial. Both the trial court and the Appellate Division regarded it as sufficient in law to submit to the jury. The jury, after seventy-eight minutes of deliberation, brought in a verdict for plaintiff.

It is clear that in a case such as this, where both parties' intestates died as a result of the same event which constitutes the subject matter of the suit, and where no eyewitnesses can be found, only circumstantial evidence will be available to enable the jury to reconstruct the circumstances surrounding the accident. In such death cases, the " plaintiff is not held to as high a degree of proof of the cause of action as where an injured plaintiff can himself describe the occurrence " (*Noseworthy* v. *City of New York*, 298 N. Y. 76, 80). Thus reasonable inferences may be drawn from the evidence to make out a prima facie case (*Galbraith* v. *Busch*, 267 N. Y. 230; *Wank* v. *Ambrosino*, 307 N. Y. 321, 323-324).

The reasonable inferences, however, must permit an assemblage of all the facts necessary to establish the cause of action — i.e., negligence *and* proximate cause (*Boyce Motor Lines* v. *State of New York*, 306 N. Y. 801). Stated otherwise, to hold defendant liable for the death of Cole, the evidence here must show (1) that Swagler was in *control* of the car at the time of the

accident; (2) that Swagler was *negligent* in his operation of the car, and (3) that said negligent operation by Swagler was the *proximate cause* of the crash in which Cole died.

(1) The case of *Towne* v. *Bunce* (307 N. Y. 868), recently decided by us, involved a similar accident in which both persons in a car that left the road were killed by the crash. We there affirmed the lower court's dismissal of the complaint, it appearing that it was " impossible " to infer from the scattered position of the bodies which of the parties' intestates had been driving. In our opinion, such is not the case here, and the only reasonable inference is that Swagler was driving his own car.

(2) From the physical circumstances that the car had traveled 177 feet after leaving the highway, striking two trees, uprooting one, passing through bushes and breaking itself in two before it came to rest, the jury had the right to find that when Swagler's car left the road it was traveling at a high rate of speed. Whether it was in excess of the State-wide maximum speed of fifty miles per hour (Vehicle and Traffic Law, § 56, subd. 3), however, cannot be determined upon the scanty facts in this record. Speed in excess of that permitted by law, it is true, may be evidence of negligent operation (*Lee* v. *City Brewing Corp.*, 279 N. Y. 380, 388–389), but that has not been established here. Even beyond this, however, as we have often stated, there can be no inference of additional negligence, such as the failure to keep a lookout or maintain control, based on the mere fact that the car left the road (*Galbraith* v. *Busch, supra*; *Lahr* v. *Tirrill*, 274 N. Y. 112, 117; *Marinan* v. *Kronberger*, 280 N. Y. 640; *Epstein* v. *Cohen*, 288 N. Y. 307). As we said, per CROUCH, J., in *Tortora* v. *State of New York* (269 N. Y. 167, 170): " When an automobile swerves and leaves the road for no definitely assignable reason, it is altogether possible that the accident was due to either of several causes, the failure of the steering gear or a lapse on the part of the driver. Both frequently happen. * * * In all such cases the balance of probabilities between causes which entail liability and others which do not is equal enough so that an inference of fact which entails liability is the result of mere speculation." Thus, it does not appear to us that a case of negligence has been made out on this record.

(3) Even if we were to hold that excessive speed amounting to negligence was established here, in order to sustain the judgment appealed from we would be required to say that the jury could have found that such speed was the proximate cause of Cole's death (see *Joyce* v. *Brockett,* 205 App. Div. 770, 772, affd. 237 N. Y. 561). This we may not do, for, as Judge Cardozo wrote in *Martin* v. *Herzog* (228 N. Y. 164, 170), we must beware of '' confusing the question of negligence with that of the causal connection between the negligence and the injury ''.

Speed upon a highway in and of itself will not explain a swerve therefrom without some additional evidence, as, for example, limited visibility or a curve in the road. It is plaintiff's burden to demonstrate the presence of some such added circumstance in order to recover on the theory that excessive speed constituted the proximate cause of the crash. Here we are told the night was clear, the pavement dry, there was neither snow nor rain, and we have no evidence of any curve in the road.

Thus, in the present case, more evidence than that which was offered was required to make out a prima facie case. The evidence presented was exceedingly meager, and might well have been supplemented by additional proof tending to cast light on the cause of the accident. While the possible existence of such proof can, of course, have no bearing upon our disposition of the case, it is nevertheless obvious from its lack that plaintiff proceeded on the theory that the automobile must have been traveling beyond the lawful limit because of the resulting damage, and that was all that was necessary to make out a prima facie case.

It is well settled that where an accident is one which might naturally occur from causes other than a defendant's negligence, the inference of his negligence is not fair and reasonable (*Foltis, Inc.,* v. *City of New York,* 278 N. Y. 108, 117; *Galbraith* v. *Busch, supra,* pp. 233–234; *Tortora* v. *State of New York, supra*). Here it may have been a variety of causes other than Swagler's negligence that led to this accident. Indeed, the cause of the accident remains undisclosed upon this record.

Accordingly, the judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

DYE, J. (dissenting). I dissent and vote to affirm. As I read this record, the circumstances surrounding the happening of the fatal accident justified the trial court in submitting the controverted issues to the jury for its determination. The charge to the jury was adequate and the proof was such that a jury was justified in drawing an inference that the car was being operated by its owner, the decedent Swagler. Furthermore, there is undisputed evidence that the death car, after leaving the highway, made a path through the field measuring 177 feet, broke several natural obstacles, uprooted a tree and when it finally came to rest, was completely demolished — " sheared right in half ". True, there were no eyewitnesses but taken together such circumstances were enough to support the inference implicit in the jury verdict that the death car was being operated by the decedent Swagler in a negligent and careless manner. All findings of fact, implicit in the jury verdict, having been unanimously affirmed in the court below, are not open for our review.

The judgment should be affirmed, with costs.

CONWAY, Ch. J., DESMOND, FULD, VAN VOORHIS and BURKE, JJ., concur with FROESSEL, J.; DYE, J., dissents in an opinion.

Judgments reversed, etc.