CHARLES LO PICCOLO, Respondent, et al., Plaintiffs, *v.* KNIGHT OF REST PRODUCTS CORPORATION, Appellant.

First Department, March 17, 1959.

*John G. Reilly* of counsel (*Harold V. McCoy* with him on the brief; *Reilly & Reilly*, attorneys), for appellant.

*Frederick W. Scholem* of counsel (*Hyman Goldman* with him on the brief; *Frederick W. Scholem*, attorney), for respondent.

BREITEL, J. In a personal injury negligence action the jury returned a verdict for defendant. On motion, the trial court set the verdict aside as contrary to the weight of the credible evidence. Defendant appeals, urging that plaintiff failed to make out a prima facie case under the rule in *Galbraith* v. *Busch* (267 N. Y. 230), and that, in any event, the verdict should not have been set aside, as the jury would not be required, on the facts in the case, to draw an inference of negligence.

The order setting aside the verdict in favor of defendant and granting a new trial should be reversed, the verdict reinstated, and judgment entered in favor of defendant, dismissing the complaint.

On August 1, 1950, on the Manhattan Bridge in this city, two trucks, one driven by plaintiff and the other owned by defendant, collided head-on. The day was rainy and the road surface slippery. The roadway was constructed of steel-ribbing with recessed concrete fill, allegedly adding to the slipperiness of the surface. As a result of the impact plaintiff was thrown from his truck and sustained injuries.

Defendant not only disputed liability but disputed the nature and extent of the injuries allegedly sustained by plaintiff.

Defendant, however, offered no testimony on the question of liability. Its driver was not called as a witness. The sole evidence on the cause of the accident came from the witnesses

produced by plaintiff. Thus, plaintiff testified, referring to defendant's truck, that it " shoots out from my extreme left lane and with a flash it's right in front of my truck, hit me head on and I remember just flying, and that's all I remember ". Another truck driver, John Babick, who was driving immediately behind plaintiff's truck, testified as follows: " Well, I was driving up — this pickup panel was in front of me, this other truck came down and sideswiped him, hit him head on, swung him around and went right across the other side of the lane, and the whole highway tied up and this fellow here was lying out in the roadway with his head bleeding and bleeding from the mouth. That's all I remember." The foregoing was the only direct testimony on the cause of the accident.

Plaintiff was cross-examined by defendant, largely to establish a prior accident in 1946. In that accident plaintiff sustained an injury to his back. In this case, plaintiff also claimed injuries to the back, in addition to a disputed fracture of a facial bone. During the same cross-examination, plaintiff's increased earning power since the accident was also established. Plaintiff was not cross-examined as to the cause of the accident. Plaintiff's witness, Babick, was cross-examined primarily by defendant to establish the unusual construction of the roadway and the slipperiness of the surface. When pressed as to whether the surface was very slippery, the witness said: " It was slippery, I am not saying very slippery ". Defendant, on cross-examination, developed similar evidence from the police officer, who had come to the scene after the accident, namely, to the effect that the weather was drizzling and that the roadway surface consisted of steel mesh that protruded past the concrete base, that is, was " waffle-iron in that respect ".

As noted earlier, defendant offered no evidence on its own case as to the cause of the accident. It offered, however, the testimony of a physician selected from the court-designated medical panel. He testified to the finding in the hospital record of the facial-bone fracture, but added that he had not had the opportunity to verify that fracture. With regard to plaintiff's back injuries and neurological complaints, he minimized or negated the conditions and suggested that the litigation was a cause of the claimed symptoms. He also described the lack of symptoms when plaintiff's attention was distracted in the course of his examination. In setting aside the verdict the trial court restrainedly observed that " the credibility of certain witnesses was certainly weakened ". Since, except for the medical panel physician, all the  wit-

nesses who testified were those provided by plaintiff, the reference to them is unequivocal.

This was the substance of the proof in the case.

Since the case of *Galbraith* v. *Busch* (267 N. Y. 230, *supra*), it has been settled law in this State that proof merely of the sudden swerving of an automobile from its own lane is not prima facie evidence of negligence or evidence sufficient, without more, to permit an inference that the driver was negligent. The court then observed that a sudden swerve might be due to several causes, including the operation of the automobile, the condition of the vehicle, or the condition of the roadway. As there were no extraordinary conditions in the road, however, which would account for the accident, it was held that the probable cause of the accident involved the operation of the automobile or some defect in it. Since Galbraith was a guest, an unknown defect in the automobile would not ground liability, as a guest was owed no duty with regard to such defects. In that respect the case turned on the fact that Galbraith was a guest. But, in a larger sense, the holding is that a party, who seeks to make out a prima facie case where there is insufficient evidence to apply the doctrine of *res ipsa loquitur*, must establish that every probable cause of the accident rests on the violation of a duty owed to him.

In this case there was evidence of " extraordinary conditions " with respect to the road, namely, the steel-ribbing-concrete construction and the added slipperiness of the surface due to the rain or drizzle. Consequently, the analysis and result of the *Galbraith* case may not be avoided.

The rule of the *Galbraith* case has been consistently followed (*Lahr* v. *Tirrill*, 274 N. Y. 112; *Cole* v. *Swagler*, 308 N. Y. 325; *Hollenbeck* v. *Hollenbeck*, 286 App. Div. 937; cf. *Marinan* v. *Kronberger*, 280 N. Y. 640).

Before the rule had been settled, this court had held differently in a case where a truck, unexplainedly, had jumped the sidewalk and struck some pedestrians. (*Locicero* v. *Messina*, 239 App. Div. 635.) Whether the *Locicero* case may be reconciled on the doubtful distinction that the vehicle jumped a pedestrian sidewalk, rather than merely swerving from a proper lane, need not now be determined.

Just a month before the *Locicero* case was decided, however, this court decided *Bennett* v. *Edward* (239 App. Div. 157). The facts there were indistinguishable from those in the *Galbraith* case. It was held that the doctrine of *res ipsa loquitur* applied, and that the defendant had the burden to explain the accident and, if possible, overcome the " presump-

tion '' of negligence. This is precisely the rule that was overturned in the *Galbraith* case. And it was the dissenter in the *Galbraith* case who relied upon the *Bennett* case, among others. So it was evident that, in 1933, the thinking of this court rested upon a basis which was about to suffer total rejection in the Court of Appeals.

At first blush and as a novel proposition, it may seem that a driver whose vehicle suddenly swerves from its proper lane should have the duty to come forward and explain why the untoward event has occurred. Nevertheless, it is also understandable why the courts in this State have laid down the rule that it is not sufficient to place such a burden upon the defendant, if there are any circumstances which would otherwise reasonably account for the event without the defendant being negligent.[*] In the *Galbraith* case, because the pavement was dry and the weather clear, the only two categories of causes which could account for the sudden swerving seemed to the court to be either negligent operation or negligent maintenance. In this case, there is an additional category of probable causes which could account for the sudden swerving of the automobile, namely, the peculiar construction of the roadway aggravated by wetness of the surface. In other words, the proof suggested a skid as strongly as it did a wheel-controlled deviation from the proper lane.

In any event, whether the *Galbraith* rule is justified or not, it has certainly become entrenched, and has been restated approvingly only so recently as in *Cole* v. *Swagler* (308 N. Y. 325, *supra*). Not to be ignored as a policy factor is the wide

---

[*] Thus, in the *Galbraith* case, Judge LEHMAN said (p. 234): " The doctrine of *res ipsa loquitur* is not an arbitrary rule. It is rather a common-sense appraisal of the probative value of circumstantial evidence. It requires evidence which shows at least probability that a particular accident could not have occurred without legal wrong by the defendant. To negative every possibility that the accident occurred in some extraordinary manner which would exculpate the defendant is often impossible. In the administration of the law we must be satisfied with proof which leads to a conclusion with probable certainty where absolute logical certainty is impossible. We may be constrained to act upon incomplete evidence where complete evidence is impossible. Then the logical probative force of the evidence produced is measured, in part, by the test of whether it is the best evidence available. * * * That doctrine (*res ipsa loquitur*) has been applied here because the evidence shows that the automobile in which the plaintiff was a guest was in the exclussive possession and control of the defendant. The courts below in applying that doctrine have failed to consider whether the circumstances, though unexplained, show that ordinarily the accident would not have occurred without neglect of duty owed by the defendants or either of them to the plaintiff." (See, also, Prosser, Torts [2d ed.], *op. cit., infra*, p. 212.)

availability which now exists to examine the defendant before trial and establish the circumstances of the accident; nor have the courts ignored the pervasiveness of liability insurance or been unaware of its practical consequences.

In considering the proof in this case as to whether the swerving was so sudden as to preclude any deliberateness in the operation of the automobile which, in turn, might be suggestive of negligence by the driver, the distinction laid down by Mr. Justice BERGAN in *Montgomery* v. *Humphrey* (284 App. Div. 365) may not be ignored. In the *Montgomery* case, however, there was evidence in the record that before the accident, for some measurable interval, defendant's vehicle had begun to veer to the wrong side of the road, and that this drift had continued beyond the center line. This, of course, negated the suddenness of the swerve. Hence, it was very properly held that there was evidence of negligence which, unless rebutted, sustained the jury verdict in favor of plaintiff. In this case there is nothing comparable to that proof. If there is any such proof, it must be found in the testimony of the witness Babick. And all he said was that defendant's truck " came down and sideswiped him, hit him head on, swung him around ". There is no time interval suggested by any part of this somewhat contradictory description of the accident, indicating deliberateness in the operation of defendant's vehicle, as there was in the *Montgomery* case.

For this reason, it would appear that under the existing rules plaintiff did not establish a prima facie case.

But, even assuming that plaintiff had established a prima facie case based on *res ipsa loquitur,* it would not have provided such proof of defendant's negligence which a jury, in the absence of rebuttal, was bound to accept. At best, plaintiff was relying upon proof which, it might be argued, a jury was entitled to accept in drawing an inference of negligence. It is now well settled in this State, and in most of the jurisdictions of the country, that, under such circumstances, the jury is not bound to make the inference of negligence, even if the defendant offers no countervailing proof. The rule was definitively laid down in the leading case of *George Foltis, Inc.* v. *City of New York* (287 N. Y. 108), settling considerable confusion among the precedents which then obtained in this State. The history and the analysis of the rule have been exhaustively stated by Prosser (Prosser, Torts [2d ed.], § 43).

It is no longer doubted that the doctrine of *res ipsa loquitur* classifies as simply another species of circumstantial evidence. As such, the permissible inferences and the procedural con-

sequences relate to the nature and quality of the evidence offered by plaintiff to sustain the inference of negligence. (*Galbraith* v. *Busch,* 267 N. Y. 230, 233–234, *supra*; Prosser, Torts [2d ed.], *op. cit.,* § 43.) Thus, the jury in this case was entitled not to draw the inference of defendant's negligence, as urged by plaintiff and disputed by defendant, in view of the proof as to the condition of the highway at the time of the accident. Moreover, it would be a meaningless distinction to differentiate between directing a verdict for plaintiff and holding that the verdict in favor of defendant was against the weight of the credible evidence. Because to so hold is to say, in effect, that the jury had no reasonable recourse except to find in favor of plaintiff, unless defendant came forward and rebutted plaintiff's proof. This is exactly the consequence which follows from assuming (erroneously, under the cases) that there was a " full " presumption of negligence from the sudden swerving from the proper lane, which must be rebutted if the case is even to go to the jury. The doctrine of *res ipsa loquitur* would not take us that far (*George Foltis, Inc.* v. *City of New York, supra,* esp. pp. 118–119; Prosser, Torts [2d ed.], *op cit.,* § 43).*

Accordingly, the order setting aside the verdict and granting a new trial should be reversed, on the law, on the facts, and in the exercise of discretion; the verdict in favor of defendant should be reinstated, and judgment entered dismissing the complaint, with costs to defendant-appellant.

BOTEIN, P. J. (concurring). I agree with Justice BERGAN's illuminating analysis of the *Galbraith* case (*Galbraith* v. *Busch,* 267 N. Y. 230), and with his circumscribed application of that decision to the fact situation under consideration here. However, at the most plaintiff was entitled to go to the jury upon the basis that he had made a prima facie showing of negligence.

---

* In the *Foltis* case, Chief Judge LEHMAN said (p. 118) : " Though the plaintiff's proof, when it rested, may have been sufficient to establish *prima facie* the negligence of the defendant, it was certainly not conclusive proof. Even where the rule of *res ipsa loquitur* is applied, the burden of showing that the injury is due to the negligence of the defendant rests on the plaintiff. The burden never shifts to the defendant, and the plaintiff must sustain its claim by a preponderance of evidence. (*Plumb* v. *Richmond Light & R. R. Co.,* 233 N. Y. 285.) Here the defendant produced evidence intended to meet the *prima facie* case established by the plaintiff. The jury is the trier of the facts. If conflicting inferences may be drawn, choice of inference must be made by the jury. Upon all the evidence in this case the jury refused to find that the plaintiff had proven negligence by a preponderance of evidence. Its verdict may not be disregarded unless at the close of the whole case the plaintiff's *prima facie* proof had become conclusive."

The case was in fact given to the jury under a fair charge and that in my opinion should be the end of it.

Chief Judge CRANE in his dissenting opinion in the *Galbraith* case defined the *res ipsa loquitur* doctrine as follows, at page 238 (a definition accepted by Judge LEHMAN in his majority opinion): " ' The circumstances of the case unexplained justify the inference of negligence.' " I believe the circumstances in this case would have justified, but did not compel an inference of negligence (*George Foltis, Inc.* v. *City of New York*, 287 N. Y. 108). It was for the jury, and not for us, to assess the weight of the inference coupled with the failure of defendant to come forward with its explanation of the manner in which the accident had occurred. This the jury has done and we should not disturb its determination.

In holding that when the jury rejects an inference which a jury is entitled to draw the verdict is against the weight of the credible evidence, we come perilously close to stamping the inference of negligence as a conclusive one.

BERGAN, J. (dissenting). Although defendant gave no proof of the manner of occurrence of the accident, it did not happen in a factual vacuum; and there are enough facts in the record fairly to sustain a finding of negligence without resting the case entirely on pure inference that its naked occurrence alone imputed negligence.

It is fair to infer that the undue speed of defendant's truck in view of the surface and traffic conditions on Manhattan Bridge at the time of the accident was an element in the occurrence. The plaintiffs' vehicle was traveling in the lane on its farthest right in the direction of Brooklyn. Another eastbound lane separated the lane in which plaintiff Lo Piccolo was driving from the single westbound lane in which defendant's truck was moving.

To run into plaintiffs' vehicle it was necessary for defendant's truck not only to leave its own lane, but to cross the middle lane set up for traffic the other way, and to continue on to the next eastbound lane. That its speed was rapid is suggested both by the rapidity with which it made this cross transition and by the physical consequences of the collision it caused when it reached the ultimate wrong lane.

Plaintiff Lo Piccolo described this movement of defendant's truck across the bridgeway as coming "from my extreme left lane." He continued his description: "with a flash it's right in front of my truck". His further description was, using the present tense, that it "shoots out".

The possibility might exist, of course, that due to the wet surface condition of the bridge defendant's truck skidded or slid more than its driver might expect; but to get across the bridge with the speed indicated by this undisputed narrative is substantial evidence that the defendant's truck was going much too fast before it went out of its own lane.

The physical results of the impact indicate high speed. The collision was so great that Lo Piccolo was hurled entirely out of the cab of his truck onto the bridge pavement. The witness Babick, driving right behind plaintiffs' vehicle described the impact as great enough to turn plaintiffs' truck, i.e., "swung him around", and the momentum of defendant's motion was such that he "went right across the other side of the lane".

Not only do the photographs of plaintiffs' truck indicate it was hit by a vehicle moving at considerable velocity, but the descriptions by witnesses who observed the truck are to the same effect. One witness, describing it, noted that "the complete body of the truck had been smashed" and an expert on damage testified that the photographs indicated to him that "it looks like salvage".

This sort of result can scarcely be charged alone to a slippery bridge and reasonably ought to be charged to undue speed on a slippery bridge. In *Galbraith* v. *Busch* (267 N. Y. 230) and other similar authorities with one exception, on which defendant relies, the element of speed was clearly out of the case; but the record before us does not permit us so confidently or so conclusively to rule it out.

Besides this, we are required to take notice under the proof in this case and the undisputed areas of the record as it comes to us, that by public regulation traffic moving in the direction of Brooklyn was assigned to two lanes in the bridgeway and traffic bound for New York to one; and that it would be unlawful and a violation of this public traffic regulation for the defendant's truck to be operated toward New York in either of the two Brooklyn-bound lanes.

When the driver of defendant's truck operated the vehicle in the wrong way in the middle lane and continued to operate it in the wrong way in the farthest left lane for him he was guilty of a technical violation of these public traffic regulations.

His reason for getting into the wrong lane may have been good and have been sufficient to have excused the violation; he may, without carelessness, have lost control of his vehicle; something may have happened to it which he would not reasonably have anticipated. He may have been able to make a valid and convincing explanation why he was there and why

he injured plaintiff Lo Piccolo when he was there; but he gave no explanation.

We would think a case of negligence had been made out prima facie on this showing alone. If a driver runs through a red light and knocks a man down, he will be entitled to be free from the imposition of damage if he makes a good explanation showing it was not his fault; but it would not be easy to free him both from liability and from making the explanation; and we would say at once and as a matter of course in such a case that prima facie a cause of action in negligence had been made out on such a showing alone.

The operation of a motor vehicle on the wrong side of the road has many times been held in New York to constitute negligence prima facie. (See, e.g., *Meyer* v. *Whisnant,* 282 App. Div. 930; *Clifford* v. *Sadlowski,* 268 App. Div. 941; *Dougherty* v. *Braddock Automatic Music Corp.,* 277 App. Div. 923; N. Y. Auto. Law, § 2022.) As KADIEN, J., notes in *Betts* v. *Queens Farms Dairy Co.* (162 Misc. 583, 584), there is a '' presumption of negligence '' against the driver involved in a collision on his wrong side of the road. It is not easy to distinguish the case before us from those which rest on the general rule that a violation of traffic statute or regulation, if it causes injury, will prima facie be deemed negligent.

It had been drizzling on the day of the accident and there is proof that the bridge was slippery; but on cross-examination of one of plaintiffs' witnesses defendant developed that it was not '' very slippery ''. It seems fair to assume that the surface of the bridge was wet and slippery as it would be on any one of the numerous rainy or drizzly days of the year which are the inescapable incidents of our climate.

There is nothing whatever in the record to support the argument of the defendant here that the bridge surface created any hazard or played any part in the occurrence of the accident. A policeman assigned to the Harbor Precinct on traffic duty on the Manhattan Bridge who was at the scene of the accident testified that in this area the construction of the surface of the bridge consisted of concrete '' imbedded in the steel mesh and that the steel mesh was raised above the concrete.''

Trial counsel for defendant described this as '' waffle iron like ''; but there is no proof that this was not a sound way to construct and maintain the bridge surface; or that the area which the steel rose above the concrete bed did not actually add to the friction and hence to the stability of rubber-tired wheels moving over it. The inference is not readily deducible that this was some patch of defective construction upon which

the defendant's driver came suddenly and found himself in danger.

On this important point the bridge policeman testified that "the greater portion of the bridge is of this material but there are certain spots that is solid concrete." It is not possible to think that the designers of the bridge would make a special effort at what must have been additional expense to lay down a surface for the entire bridge that would create a special hazard in wet weather.

There is no showing whatever that this bridge which carries an enormous volume of traffic, in wet weather as in dry, was not well designed for its purpose or that its surface has any tendency whatever to cause any of the many thousands of drivers who use it with reasonable care to lose control of their vehicles and run into others. We regard the bridge surface as described in this record as an inadmissible excuse for the behavior of defendant's truck.

But even if there were no proof in the record in the direction of showing negligence affirmatively, and the happening of the accident could be looked at as in a factual vacuum — a pure event without demonstrated cause — we would still be of opinion that a case had been made out prima facie; and that if no acceptable explanation be given by defendant, a plaintiffs' verdict would be warranted.

To reach such a conclusion as this requires a careful re-examination of *Galbraith* v. *Busch* (267 N. Y. 230, *supra*). The fulcrum of decision in that case is that the plaintiff was defendants' guest passenger. There are words in the opinion of Judge LEHMAN, true enough, which deal with general concepts of liability; but the heart of the case depended on the sort of duty which a man owes to one he invites to ride with him in a motor vehicle.

It is the nature of this duty which created the logical impasse for which the opinion could find no acceptable escape. This impasse may be very simply stated: the invited passenger in getting in the car "assumed the risk of any defect" in the car not known to the defendants; but the defendants would be liable to the passenger for their negligence in the operation.

Upon a record such as *Galbraith* presented, in which it was equally possible to find that the accident occurred either through a defect which the invited passenger was deemed by the court to have "assumed"; or through negligence, the inference of negligent operation could not be drawn for the explicit reason that the inference of cause of accident through defect in the car could not be eliminated (p. 235).

It is perfectly clear that this narrow situation of two inferences applicable to a passenger's cause of action was the controlling consideration of decision in the case; and that this was the issue debated by the court is laid down in the dissenting opinion of Chief Judge CRANE who addresses himself **squarely** to the problem of the guest passenger, as indeed does the majority opinion of Judge LEHMAN.

That this rule has thus far in New York been one applied to guests is manifest from the cases which followed *Galbraith* in the Court of Appeals. *Lahr* v. *Tirrill* (274 N. Y. 112) was a guest case; *Marinan* v. *Kronberger* (280 N. Y. 640) was a guest case; and *Cole* v. *Swagler* (308 N. Y. 325) was a guest case. The Third Department case of *Hollenbeck* v. *Hollenbeck* (286 App. Div. 937) was a guest case. In this court *Bennett* v. *Edward* (239 App. Div. 157) holding the other way, referred to by Chief Judge CRANE in his dissent in *Galbraith* and necessarily overruled by that decision, was a guest case. This narrow doctrine, applying in a very limited area, has not been extended by the Court of Appeals to parties who are not guests; and it ought not be extended by us.

The problem of balanced inferences created by the constructive assumption of risk by an invited guest for all defects in a car not known to the owner which may come to stand in the way of a guest's right to recovery if he is hurt, has no logical application to injuries done to strangers by the operators of vehicles.

The injured stranger, unlike Mrs. Galbraith, has assumed no risk in connection with the operation of the vehicle which does him injury. He has the right, on the other hand, to assume that when he uses a public highway he will not be run into or run down; and if he shows a court that he has been injured under circumstances from which the inference of negligence may reasonably be drawn, it ought to be held he has made out a case prima facie even though some countervailing inferences are also admissible.

The rule that a case is made out in such circumstances is one of very general acceptance under firmly established principles; and one good statement of it, in Corpus Juris Secundum, Negligence (Vol. 65, § 220 [2], p. 987) is that " where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of expla-

nation by defendant, that the accident arose from want of care ''. The decision of this court in *Locicero* v. *Messina* (239 App. Div. 635) is quite consistent with this.

To hold that the owner of a vehicle, who runs into a stranger on the street in circumstances which could be held to be negligent, need make no explanation in the absence of a showing by plaintiff of the piecemeal processes by which the defendant caused the accident has grave implications in its impact on modern judicial policy. For one thing, the temptation by a driver who causes injury to sit tight and make no explanation and thus safely escape liability will often be deemed quite irresistible.

We thus reach the view that the complaint ought not to be dismissed; and having reached that we move without difficulty to the further view that the verdict for the defendant was against the weight of the credible evidence and that the determination of the Judge at Trial Term to set it aside was justified.

The inference of negligence to be drawn either from the affirmative proof of negligence in the record or from the bare happening of the accident in the circumstances disclosed is, of course, in either case within the area of fact finding; and within the power of the jury to draw or not to draw the inferences; and cannot be required of the jury as a matter of law.

But the court has the power and the duty upon this kind of a record as well as any other, of deciding whether the verdict as given is consistent with the weight of the evidence; and we are of opinion that this verdict, technically within the legal competence of the jury, is strongly against the weight of evidence on the whole record.

There is here, on the facts, essentially a case of negligence wholly unexplained on the record; and the Judge at Trial Term in exercising the duty that was his of supervising fairly the work of the jury in the case before him, was warranted in directing that after this unusual result, there be a new trial.

The order should be affirmed, with costs to abide the event.

RABIN, J., concurs with BREITEL, J.; BOTEIN, P. J., concurs in result in opinion; BERGAN, J., dissents in opinion in which McNALLY, J., concurs.

Order reversed on the law and on the facts, and in the exercise of discretion, with costs to the appellant; the verdict in favor of defendant is reinstated and judgment is directed to be entered in favor of the defendant dismissing the complaint on the merits, with costs.