MICHAEL DIGELORMO, as Administrator of the Estate of GELARDO DIGELORMO, Deceased, Respondent, v. BENJAMIN J. WEIL et al., Appellants, Impleaded with Another.

(Argued October 19, 1932; decided November 22, 1932.)

*George J. Stacy* and *James J. Mahoney* for Benjamin J. Weil, appellant. There was nothing wrong with the elevator or its machinery and the defendant owner was not negligent. (*Hart* v. *Naumberg*, 123 N. Y. 641; *Paul* v. *Consolidated Fireworks*, 212 N. Y. 120; *Ryan* v. *Cortland Carriage Goods Co.*, 133 App. Div. 467; *Lafflin* v. *Buffalo & S. W. R. R. Co.*, 106 N. Y. 136; *McKenzie* v. *Waddell Coal Co.*, 89 App. Div. 415; *Glasier* v. *Town of Hebron*, 131 N. Y. 447; *Loftus* v. *Union Ferry Co.*, 84 N. Y. 455; *Dongan* v. *Champlain Transp. Co.*, 56 N. Y. 1; *Montgomery* v. *Bloomingdale*, 34 App. Div. 375.) No one knows how the accident occurred and the verdict is the result of surmise, speculation and conjecture. (*Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90; *People* v. *Razezicz*, 206 N. Y. 249; *Dobbins* v. *Brown*, 119 N. Y. 188; *Corbett* v. *Brooklyn, Bath & W. E. R. R. Co.*, 74 Hun, 375; 154 N. Y. 772; *Brianzi* v. *Crane*, 196 App. Div. 58; *Dudley* v. *Raymond*, 148 App. Div. 886; *United States* v.

*Ross*, 92 U. S. 281.) The trial court committed error in refusing to charge that if there are two or more reasons which in themselves are consistent to the happening of the accident, one of which would predicate liability, the other or others would predicate no liability, then the plaintiff has failed to meet the burden which the law requires and the verdict must be for the defendant. (*Yaggle* v. *Allen*, 24 App. Div. 594.)

*Walter G. Evans, Thomas F. Keane* and *John P. Smith* for Watson Elevator Company, appellant. There is no proof showing how the accident occurred, or that the existence of the space between the shaft door and the elevator gate was the proximate cause of the accident or in any way connected therewith. (*Lopez* v. *Campbell*, 163 N. Y. 340; *Specht* v. *Waterbury Co.*, 208 N. Y. 374; *Lasie* v. *D. & H. R. R. Co.*, 142 App. Div. 214; *Ruback* v. *McCleary, Wallin & Crouse*, 220 N. Y. 188; *Ruppert* v. *B. H. R. R. Co.*, 154 N. Y. 90; *People* v. *Razezicz*, 206 N. Y. 249; *Francey* v. *Rutland R. R. Co.*, 222 N. Y. 482; *Karr* v. *Inecto*, 247 N. Y. 360; *Matter of Case*, 214 N. Y. 199; *White* v. *Lehigh Valley R. R. Co.*, 220 N. Y. 131; *Scharff* v. *Jackson*, 216 N. Y. 598; *Huff* v. *American Fire Engine Co.*, 88 App. Div. 324.) The trial court erred in declining to charge that, if the jury could find that there are two or more reasons which in themselves are consistent to the happening of the accident, one of which would predicate liability and the other or others would predicate no liability, then the plaintiff failed to meet the burden which the law requires and the verdict must be for the defendant. (*Hardie* v. *Boland,* 205 N. Y. 336.)

*Joseph Sussman* for respondent. It is for the jury to say whether the open and unguarded space between the elevator mesh gate and the hallway door, in connection with the automatic elevator, was a dangerous condition sufficient to constitute negligence (*Lyon* v. *Queensborough Corp.*, 248 N. Y. Supp. 353; *Kern* v. *Great Atlantic*

& Pacific Tea Co., 241 N. Y. 600; Clark v. New York Hotel Statler Co., 227 N. Y. Supp. 671; Hanley v. Butler, Inc., 153 N. Y. Supp. 39; Gray v. Siegel-Cooper Co., 187 N. Y. 376; Auld v. Manhattan Life Ins. Co., 54 N. Y. Supp. 222; 165 N. Y. 610; Stringham v. Stewart, 100 N. Y. 516.) There is adequate proof to show that the proximate cause of the accident was the existence of the dangerous space condition between the door and the elevator mesh gate. (Fagan v. Atlantic Coast Line R. R. Co., 220 N. Y. 301; Stump v. Burns, 219 N. Y. 306; Stubbs v. City of Rochester, 226 N. Y. 516; Warner v. New York, O. & W. Ry. Co., 204 N. Y. Supp. 607; Galvin v. Mayor, 112 N. Y. 223; Hart v. Hudson River Bridge Co., 80 N. Y. 622.) The negligence of the defendant owner arises out of the maintenance, operation and control of the automatic elevator by him while the dangerous space condition existed. (Employers' Liability Assur. Corp. v. Wagner, 214 N. Y. Supp. 313; Griffen v. Manice, 166 N. Y. 188; Munsey v. Webb, 231 U. S. 150; Condran v. Park & Tilford, 213 N. Y. 341.) The automatic elevator negligently designed and installed in conjunction with the dangerous space condition, was an inherently and imminently dangerous instrumentality for which the defendant elevator company is answerable to all persons lawfully using the same, who are injured thereby. (MacPherson v. Buick Motor Co., 217 N. Y. 382; Rosebrock v. General Electric Co., 236 N. Y. 227; Kahner v. Otis Elevator Co., 89 N. Y. Supp. 185; 183 N. Y. 512; Smith v. Peerless Glass Co., 259 N. Y. 292.) No error was committed by the trial court in its charge or in its refusals to charge as requested. (Hardie v. Boland Co., 205 N. Y. 336; Stubbs v. City of Rochester, 226 N. Y. 516.)

CRANE, J. Judgment has been recovered in negligence against the owner of an apartment house and the constructor of an elevator therein, for the death of Gelardo Digelormo, a boy six years of age. The accident happened July 27, 1927. The large apartment building of two

sections, known as No. 1975 Walton avenue, New York city, was owned and maintained by the defendant Benjamin J. Weil. In it for the use of tenants was an electric push-button passenger elevator built and constructed by the defendant Watson Elevator Company, Inc. The elevator was the work of the company; the shaft in which it ran and the doors and space leading to the elevator were the work of the architect and builder. The measurements of the shafts were taken wholly from the architect's plan. The elevator equipment included rails, car, motor, machinery and safety interlocks, excluding safety doors, saddles, jambs, etc.

The safety interlock was installed on the shaftway door to prevent the operation of the elevator unless the shaftway door was closed and locked. The Watson Elevator Company, Inc., did not construct nor install the shaftway door. On the elevator itself was a mesh gate kept closed by a pneumatic plunger. This was separate and distinct from the shaftway door. Between the two was a floor space of about eight inches. The measurement from the inside of the gate track of the elevator to the inside of the shaftway door was, to be exact, eight and eleven-sixteenths inches. This space is the essential feature of this case; upon its existence rests whatever case the plaintiff has established.

The elevator was installed in accordance with all the requirements of the Bureau of Buildings and was approved by that department of the city government in a final certificate. The general contractor, not the elevator company, constructed the space between the shaftway door and the elevator gate. The flooring of the space was part of the building. The Watson Elevator Company, Inc., cannot, therefore, be charged with any negligence in creating this space or in permitting it to exist. No complaint is made by the plaintiff of any other defect than this space; the elevator and the equipment installed by the company were in good working condition.

To complete the description it remains to be said that the elevator operated mechanically by push buttons; a button touched inside the elevator sent it to the required floor or a button worked on any floor would bring up the elevator, provided that in both instances both the elevator gate and the shaft door were closed.

The cause of the accident is extremely vague and uncertain; in fact the plaintiff has failed to show how it happened or that anybody's negligence is responsible for it.

On the day mentioned Michael Digelormo was delivering ice to the apartments and had with him his helper, Johnny Savino, and the boy Gelardo, the deceased. The time was between eight and nine o'clock in the morning. The father left the two boys and went to deliver ice. Savino and Gelardo took the automatic elevator to the second floor, where they both left it. To do so they had to open and shut the shaft door and elevator gate before the elevator would move, and of course they had to open both to get out on the second floor. After they got out both doors and gate were closed. Savino left Gelardo in the hallway near the elevator to go into apartment 2E to take ice off the dumb waiter. He was gone two or three minutes and when he came back he found Gelardo in the elevator at the third floor, dead; his head and body were crushed between the elevator and the floor of the building. No one saw the accident or knows how it happened. Gelardo had no business on the elevator and no occasion to go up to the next floor; he was to wait in the hall for Savino. To get into the elevator the boy had to open the shaft door and the elevator gate, close both and push a button. The theory of the plaintiff is that the boy opened the shaft door, stepped into the space between it and the gate, the shaft door must then have swung to and inclosed him in the space, and then somebody on some other floor must at just that moment have pushed a button and caused the elevator to rise, carrying the boy up with

it. This is altogether too highly speculative to be the basis for a recovery in negligence.

No evidence is produced to show that any person was on any of the floors at that time. If Gelardo had curiosity and capacity sufficient to leave Savino and open the shaft door, which operated on springs, he could easily have gone further and opened the mesh gate — but a step. Once inside the elevator, both doors would have automatically closed. If he or any one else had pushed a button the elevator would have gone up. Frightened or curious, he may then have opened the gate, which would stop the car. While attempting to get out, the gate may have sprung shut and the elevator started by some intending passenger, catching the boy between the car and the third floor. This might just as well have happened as the plaintiff's surmise. One hypothesis is as good as another. Nobody knows. Had he been hurt, somehow after being in the elevator, the space between the shaft door and the gate would in no way have occasioned the accident. The plaintiff's case rests entirely on the assumption that the boy opened the door and stepped between it and the closed gate. We can just as well assume that he also opened the gate and stepped in. The elevator, not the shaft door, was apparently the attraction.

The record of this case is also bare of any evidence that this elevator passage as planned and constructed by the architect and builder from approved plans was inherently dangerous so as to make the owner liable, without some notice that in operation it was defective. No evidence shows that such a space between shaft door and elevator gate was an unusual and improper construction. Possibly this was the customary way of construction. The burden was on the plaintiff to prove that from improper construction or some other warning, the owner had reason to anticipate that some one might get hurt thereby. Accidents frequently suggest remedies which would not be foreseen even in exercising the utmost care.

This judgment cannot stand as against the Watson Elevator Company, Inc., because it is in no way responsible for the space between the shaft door and the elevator gate. No duty rested upon it to tell the owner to recondition his premises, which was the reason given by the trial court for holding it liable. " You are to decide whether or not the elevator company was negligent in fixing that space and in adjusting the elevator to that space in connection with all its appliances," he told the jury. After the shaft and the shaft door had been built by the builder, the elevator company attached its electrical appliances so that the car would not move with the door open. The consequences stated, however, do not follow from such attachment. The company did not adopt the door or the space as part of its work, for such was no part of its contract. As to this defendant the complaint must be dismissed.

The owner likewise is not liable on the evidence submitted. The cause of the accident is unexplained, and no facts appear from which inferences can properly be drawn as to the way in which it did happen; that is, the inference that the door closed and shut the boy in the space between it and the gate is no more reasonable than that he opened both doors and both closed. A cause of action must be something more than a guess. Even if the former were the warranted inference, there is still lacking any proof to show that the space was a negligent and careless construction which the owner should not have maintained.

The court refused to charge the following request: " If the jury finds there are two or more reasons which in themselves are consistent to the happening of the accident, one of which would predicate liability and the other or others would predicate no liability, then the plaintiff has failed to meet the burden which the law requires and the verdict must be for the defendant." The law is that where the evidence is capable of an inter-

pretation which makes it equally consistent with the absence as with the presence of a wrongful act, that meaning must be ascribed which accords with its absence. In other words, it can only be established by proof of such circumstances as are irreconcilable with any other theory than that the act was done. (*Lopez* v. *Campbell*, 163 N. Y. 340; *Specht* v. *Waterbury Co.*, 208 N. Y. 374; *Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90.) The rule is well settled that where there are several possible causes of injury, for one or more of which defendant is not responsible, plaintiff cannot recover without proving the injury was sustained wholly or in part by a cause for which the defendant was responsible. (*Ruback* v. *McCleary, Wallin & Crouse*, 220 N. Y. 188.)

The denial of this request was an error which in itself might require a reversal and a new trial, but for all the reasons given bearing upon the merits of the case, the complaint as to the owner Benjamin J. Weil should also be dismissed. We have recently had before us the case of *Lyon* v. *Queensboro Corp.* (260 N. Y. 612). There was ample proof of the manner of the accident and some evidence of faulty construction, as against the owner.

The judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed as to both defendants, with costs in all courts.

POUND, Ch. J., LEHMAN, KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgments reversed, etc.