### RAILWAY EXPRESS AGENCY, Inc., v. FINN.

#### No. 3705.

Circuit Court of Appeals, First Circuit.

Jan. 9, 1942.

Rehearing Denied Jan. 23, 1942.

Austin M. Pinkham, of Boston, Mass., for appellant.

Thomas Allen, of Boston, Mass. (Morton M. Lewis, of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

PER CURIAM.

This is an appeal from a judgment for the plaintiff entered upon a jury verdict in an action for personal injuries.

At about 9 P. M. on November 17, 1939, defendant's servant, John McLaren, was operating a motor-driven baggage truck on a platform in Pennsylvania Station, New York City. According to his testimony a woman stepped in front of him and he swerved to avoid hitting her. The truck grazed a pillar and caromed off and the left front wheel went off the platform, the corresponding corner of the truck extending over the edge of the pit of the track on which a westbound train was due from Long Island at 9:10 P. M. With the aid of several other men McLaren was able to get the truck entirely back on the platform in a couple of minutes.

There were three signal control towers in the station, Tower A at the west end and Towers JO and C at the east end. These were in communication with one another. A government railway mail clerk saw the accident and telephoned Tower A. The assistant train director in Tower A notified the block operator in Tower JO that one of the trucks was off the platform and the block operator had an assistant of his flash Signal 50-R red. Signal 50-R was at the east end of the station on the track on which the train from Long Island was expected.

Meanwhile the train had headed into the tunnel under the East River and gone past several green signals. As it rounded a curve at a speed of 45 miles per hour, an indicator in the cab flashed yellow, signifying that the next signal, number 2EO7, was red, and the engineer made a "heavy service application" of the brake, coming to a stop three motor lengths in front of the signal. Plaintiff, a passenger in the train, had arisen from her seat and was standing by the door when the brake was applied. She was thrown to the platform of the car and injured.

Signal 2EO7 was about 3,000 feet from the station. According to the deposition of the chief train director of the station, there was no control tower between JO and F, which was at the other end of the tunnel in Long Island, and the signals in the tunnel were automatic, showing red if a train were ahead on the track, otherwise green. He stated that JO Tower controlled signals only within a quarter of a mile of the station. The block operator in JO Tower likewise deposed that that tower had no control over the automatic signals in the tunnel except Signal 2EO5 which was a quarter of a mile from the station. He stated that the train engineer could not have seen Signal 50-R and that he had no idea what caused the train to stop.

Defendant moved for a directed verdict, on the ground, among others, that there was "no evidence of any causal connection between the truck of the defendant going partially off the platform and the stopping of the train." This motion was denied. The case went to the jury, which found for the plaintiff and assessed damages in the sum of $1,253. Defendant's motion that the verdict and judgment be set aside was denied and defendant appeals. The sole issue pressed in argument before this court is whether the evidence warranted submitting the case to the jury.

Aside from showing that the railway mail clerk notified A Tower which in turn notified JO Tower of the accident to the truck, plaintiff offered no evidence establishing a causal connection between McLaren's asserted negligence in running the truck off the platform and the halting of the train. While it is true that the jury had the right to disbelieve the statements of the train director and block operator that they had not ordered Signal 2EO7 to be flashed red and that they had had no control over that signal, disbelief of testimony negating causation can hardly be regarded as affirmative proof thereof and cannot supply that element in plaintiff's case. If her case is not made out by other

evidence in the record it can hardly be bolstered by evidence squarely contrary to the point she was seeking to prove. The only other evidence on the issue was Exhibit D, "Pennsylvania Station 'JO' Cabin Plan of Interlocking Signals." There is nothing in that diagram which shows that Tower JO had control over Signal 2EO7, much less that such control was exercised.

█ Thus the jury was left to guess at the cause of the stopping of the train. Signal 2EO7 may have been operated by some tower other than JO or A, perhaps as a result of the truck running off the platform or perhaps not; there may have been a train stopped on the track ahead, but if so there is nothing to show that such a train had been held up directly or indirectly by Signal 50-R; in fact the signal which stopped the train may even have been out of order. In short, the entire matter has been left to conjecture. There is nothing in the record to show that the plaintiff's injury would not have occurred had defendant's servant not run the truck off the platform. Plaintiff had the burden of proof that negligence attributable to the defendant was responsible for her injury,[1] and she has not sustained that burden by showing merely the negligence and the injury. Her case is based upon the fallacy of confusing sequence with consequence, post hoc, ergo propter hoc. It is to be noted that the defendant here is not the railroad, which might be presumed to have peculiar knowledge of what caused Signal 2EO7 to flash red; hence the failure of the defendant to come forward with evidence on this point could not be the basis of any inference unfavorable to it.

We therefore need not decide whether there was sufficient evidence to warrant the jury's findings that the defendant's servant was negligent, that his conduct was negligent in relation to the plaintiff (cf. Palsgraf v. Long Island R. R. Co., 1928, 248 N. Y. 339, 162 N.E. 99, 59 A.L.R. 1253), or that the plaintiff was exercising due care.

The judgment of the District Court is vacated, the verdict is set aside, and the case is remanded to that Court with direction to enter judgment for the defendant; appellant recovers costs.

On Petition for Rehearing.

PER CURIAM.

On petition for rehearing, appellee mistakenly assumes that we overlooked the possibility that the blowing of the tower whistle in the station was an effective cause of the stopping of the train out in the tunnel. We were unable to find any support for the verdict in the evidence relating to the whistle. Indeed, we do not find any indication in the record that the plaintiff sought to establish this line of causation at the trial; it appears to be an afterthought.

█ The block operator in O Tower, who was one of appellee's witnesses, and upon whose deposition appellee relies, stated that when a truck goes into the pit, "we have to display the stop signal *or* blow the tower whistle." (Italics added.) He said that on this occasion he threw a red light, and when on direct examination counsel for appellee asked him the leading question, "You did not blow the tower whistle, did you?" the witness replied, "No, the train was out in the tunnel. * * *" The warning whistle referred to in the fireman's testimony must have been connected with Signal 2EO7 or else was in the cab itself, and apparently worked automatically. The tower whistle would hardly be blown to signal a train 3,000 feet away. If it could be heard at this distance it would serve equally well to halt all trains approaching the station from either direction, irrespective of the track on which they were scheduled to arrive. The jury obviously would not have been warranted, on this evidence, in inferring that the tower whistle had anything to do with the stopping of the train.

The petition for rehearing is denied.

---

[1] This is true whether the applicable law be that of New York or Massachusetts. Scharff v. Jackson, 1916, 216 N. Y. 598, 111 N.E. 242; Digelormo v. Weil, 1932, 260 N.Y. 192, 199, 200, 183 N.E. 360; Gillis v. Boston, R. B. & Lynn R. R. Co., 1929, 266 Mass. 481, 165 N.E. 497; Todd v. Winslow, 1932, 278 Mass. 588, 180 N.E. 521; cf. Sampson v. Channell, 1 Cir., 1940, 110 F.2d 754, 128 A.L.R. 394.