HELEN CROWELL et al., Claimants, *v.* STATE OF NEW YORK, Defendant.   (Claim No. 31228.)

Court of Claims, November 10, 1955.

*S. J. Feltenstein* for claimants.

*Jacob K. Javits, Attorney-General (James G. Austin* of counsel), for defendant.

SYLVESTER, J.   Claimants Helen Crowell and Josephine Crowell, sisters, were injured in an automobile accident on March 12, 1950, at about 2:00 A.M.   The claim of Anna Evan, who was riding with them at the time, has been severed and

remanded to the general calendar for nonappearance. Sometime between 9:00 and 10:00 P.M. on March 11, 1950, the three girls went riding in a car owned and driven by one John Schmid. In the car also were three other young men. Starting from Noroton, Connecticut, where the sisters lived, they drove to Bedford Village, stopping at a tavern known as the Nineteenth Hole and staying there until shortly before 11:00 P.M. Leaving there, they drove to a tavern in Tarrytown and then to a bar and grill in Ossining. They left Ossining around 2:00 A.M. to return home. Traveling easterly on Route 133 which runs generally east and west, they came to a curve in the road which the driver failed to negotiate. The car crashed into a lighting company pole, identified as pole No. 167, located at a point on the road designated as Station 87 + 50.

It appears that Route 133 along which they had traveled declines downward at Station 76 approximately, from a grade of $4\frac{1}{2}\%$ between that station and Station 79 + 50 to a grade of $9\frac{1}{2}\%$ thereafter to a point beyond the area of the accident. At Station 78 + 50 the State had erected a sign indicating an " S " curve and bearing the legend " Warning Sharp Curves ". Though the sign did not conform in design with the Manual of Traffic Devices, it was, nevertheless, posted at the proper distance in advance of the curve. The so-called " p.c." of the first part of the " S " curve was located at Station 81 + 20 and lay between the lighting company poles numbered 165 and 166 depicted on Exhibit 22. The p.c. of the second curve which turned toward the left was located at Station 85 + 16 and, unlike the first curve, was rather sharp, measuring nineteen degrees. Coming down the hill, the car negotiated the first part of the " S " curve and got as far as Station 87 + 50 where it crashed into lighting company pole No. 167. The tire marks, examined by the then chief of the local police who testified, indicated that the car left the road at a point between poles 166 and 167, and much closer to pole 166; the distance between those two poles measuring ninety-six feet. He further testified that the weather was cloudy and that the road had been wet but would not say that visibility was bad. The various photographs in evidence as well as the testimony were relied on pro and con to establish whether or not the two white lines in the middle of the road could be observed. It would suffice to say that they showed up faintly. It is established that pole 167 into which the car crashed was painted white up to four feet from its bottom and that the four concrete guideposts adjacent to the pole and which had been knocked down by the car were

also painted white; and that pole 166 was not painted white.

Claimants argue that it may be inferred that the driver was misled by reason of the fact, among others, that he was being guided in his course of travel by the trees of the woods which lined the road some distance to the right; that at the point where the road curved to the left the trees continued along a straight line, more or less, and that the driver went off the road believing it continued along and parallel with the line of trees. This, of course, is purely conjectural since the driver did not testify. It is indicated, though not clearly, that a warning sign of some kind, believed to be a hill sign, was posted in the neighborhood of Station 76, shortly before reaching the declining hill. As already stated, the hill was of a 4½% grade downward reaching to Station 79 + 50 approximately, and of a downward grade of 9½% thereafter to Station 87 + 50, the point of accident and beyond. Thus, it is established that at Station 78 + 50, which is 270 feet before the point of the first part of the " S " curve, the " S " curve warning sign was posted. It is further established that a double white line in the middle of the road could be observed, though faintly; that at the area of crash there were four concrete guideposts painted white; that the pole into which the car crashed was painted white up to four feet from the bottom. It would seem that these factors constituted adequate and reasonable warning of the curve area sufficient to enable a prudent motorist traversing that portion of the highway to negotiate it safely. We may not altogether overlook the fact that the occupants of the car had been making the rounds of drinking places that night until the very early hours of morning and, that two of them seated in front with the driver had fallen asleep. The driver who, according to the claimants limited his drinking that night to six to eight beers, was not on hand to testify, though counsel stated that he had endeavored, unsuccessfully, to reach him. The record would indicate that their midnight carousal might well have had its effect on the degree of care with which the car was being driven, though no finding thereon can be made in the absence of any evidence as to the cause of the crash. In any event, in view of the cautions indicated both by the signing of the road and the white markings on the guideposts and lighting pole, all of which warned of the curve and indicated the way ahead, the State must be held to have met its duty of maintaining the road in a manner safe for travel. There is no evidence here that the driver either saw or did not see the warning sign. Nor is there any evidence of probative value as to what caused

the car to go off the road. One can only speculate as to that. The driver might have been dozing at the wheel — he might not have. It is not known. The accident might have been due to the driver's sole negligence, i.e., if the driver had seen the sign and proceeded recklessly thereafter in disregard of the caution, or if he had been asleep. And if the mishap was attributable to the sole negligence of the driver, the items of alleged faulty maintenance become immaterial. The driver was not here to testify and it is not necessary to draw any unfavorable inference by reason of his absence. His presence might have enlightened the court as to the occurrence. In his absence there remains an insufficiency of evidence as to the cause of the accident. In these circumstances, and assuming, *arguendo,* that the State had maintained the road negligently, it may not be found that the State's negligence was a proximate cause of the accident — thus, there is a failure of proof that the State's negligence caused the injury (*Ruback* v. *McCleary, Wallin & Crouse,* 220 N. Y. 188, 195; *Digelormo* v. *Weil,* 260 N. Y. 192, 200).

In *Ruback* v. *McCleary, Wallin & Crouse* (*supra*) it was stated by a unanimous court, per McLAUGHLIN, J. at page 195: " The rule is well settled that where there are several possible causes of injury, for one or more of which defendant is not responsible, plaintiff cannot recover without proving that the injury was sustained wholly or in part by a cause for which defendant was responsible. If the matter is left in doubt and it is just as probable that the injury was the result of one cause as the other, there can be no recovery." And, though this does not mean that the claimants must exclude the " existence of remote possibilities that factors other than the negligence of the defendant may have caused the accident " or that he must eliminate every other possible cause (*Ingersoll* v. *Liberty Bank of Buffalo,* 278 N. Y. 1, 7), it can hardly be maintained that it was a remote possibility in this case that the injury could have been caused by the driver's negligence. He was in the driver's seat where any lapse upon his part might bring disaster. It follows that no recovery may be had in these circumstances. The State is entitled to judgment dismissing the claim. Findings may be submitted within ten days; otherwise this memorandum will constitute the decision of the court.