FLORA A. WILKINSON, as Administratrix of the Estate of WALTER N. WILKINSON, Deceased, Appellant, v. PHILIP T. DUNCKEL, Respondent.

Third Department, November 17, 1959.

*Joseph P. Leary* for appellant.

*Kramer, Wales & Robinson* (*Donald W. Kramer* of counsel), for respondent.

FOSTER, P. J.  This is an appeal from a judgment of nonsuit in a death case granted at the conclusion of the evidence offered by the plaintiff.

The intestate was driving an automobile in a northerly direction on a State highway known as Route 28, some distance northerly of the Village of Milford, New York.  He was apparently alone at the time but prior thereto had been in the company of the defendant Dunckel, and left the latter at Milford to drive his own car.  It could be found from the testimony that somewhere along the route, and at a blind curve, the intestate's car left the road, struck a culvert and broke a concrete post, gouged out part of a bank for a short distance and struck a second culvert, and then went back on the highway and came to rest about 182 feet from the point where it left the road.  It seems to be assumed by the parties that the intestate was thrown out of his car as a result of this accident, and that his body was resting on the roadway at a time when it is claimed that the defendant's car struck him.  Actually no one saw what happened to intestate at the time of the first accident and proof that his body was lying in the highway prior to any impact by the defendant's car rests in a statement made by the defendant to State troopers as follows:  " As we approached the scene of the accident I saw Wilkinson's car on the right-hand side of the road facing me.  I then saw Wilkinson's body laying in the road.  If I ran over Wilkinson's body in the road with my car it was due to the fact that I veered to the left in order to avoid striking Wilkinson's car.''

Defendant was evidently following the intestate and the basis of the case alleged against him is that he carelessly and negligently ran into the body of the intestate, and that such impact was a proximate cause, or one of the proximate causes, of intestate's death.  The cause of death, as stated in the Coroner's death certificate, was a fractured skull.  Some blood and hair were found on the left front wheel of the defendant's car, and

also what appeared to be flesh on the hubcap of the wheel. This physical evidence plus the oblique admission contained in the defendant's statement certainly could be accepted by a jury as proof that the left front wheel of defendant's car came in contact with the intestate's head.

After the first accident the intestate's car was in the right lane of the highway proceeding north, the direction in which he had been traveling, but pointed in the opposite direction. Apparently after his car returned to the highway it turned backwards. This of course accounts for defendant's statement that he had to veer to the left in order to avoid the intestate's car. According to the testimony of the State troopers the defendant also admitted that he did not stop at the scene of the accident but continued on for about half a mile to the north in order to get help. In the meantime another car appeared on the scene and its driver saw the body of the intestate, apparently revealed by the lights of his own car or the light shining from one headlight of the intestate's car. This witness, although he was traveling at a speed estimated at 50 miles an hour, was able to stop his car seasonably in a driveway near an adjacent farm house, and alighted to look at the body. He noticed the intestate was bleeding around the face and there was a little blood in the road. He also saw something in the nature of vapor coming from the intestate's mouth for a short time. This same witness apparently came on the scene of the accident after the defendant had gone through and before he returned to the scene of the accident because when the witness came upon the body there was no other car or person at the scene.

When the State troopers arrived at the place, and there were two of them, the body had not been moved. Their testimony was generally to the effect that the body was 18 feet southwest of the car, with the head facing northeast and 8 inches from the white line in the southbound lane; also that the remaining headlight of the intestate's car shone directly over the body. According to them there was blood on the road and the intestate's head was badly cut up, with large cuts and holes in it, and the hair matted with blood.

The foregoing brief resume would seem to indicate that insofar as negligence is concerned the plaintiff made out a prima facie case sufficient to survive the motion for a nonsuit. Certainly the jury could find that the defendant's car struck the intestate's body, and it could also have found that the defendant could have avoided such an impact by the exercise of reasonable care. The difficulty with the case, as the Trial Judge viewed it, rested in the medical proof. One physician was sworn for the plaintiff

and he testified, in answer to a hypothetical question, that in his opinion the impact of the left front wheel of defendant's car with the intestate's head could have caused a fractured skull. He also testified however that the fractured skull could have been caused if the intestate had been thrown out of his own car onto the macadam surface of the highway without the intervention of any other instrument.

In considering the propriety of a nonsuit granted at the conclusion of a plaintiff's case we do not deal with the weight of evidence. The plaintiff in such a situation is entitled to the most favorable inferences that can be drawn from the testimony, and in a death case the plaintiff is not held to as high degree of proof as in the ordinary personal injury case where the plaintiff is alive and can describe the occurrence (*Noseworthy* v. *City of New York*, 298 N. Y. 76). Any legitimate conclusions that can reasonably be drawn from the evidence in support of plaintiff's case should not be rejected as a matter of law (*Getty* v. *Williams Silver Co.*, 221 N. Y. 34; *Galbraith* v. *Busch*, 267 N. Y. 230; *Ingersoll* v. *Liberty Bank of Buffalo*, 278 N. Y. 1).

On this record a jury would not be bound to find that the intestate was thrown out of his car with such violence as to cause a fatal fracture of the skull. Indeed, any finding to that effect would necessarily be based upon surmise and speculation, and, it may be added, there might be some difficulty in reconciling such a speculative finding with the relative positions of the intestate's car and his body upon the highway, plus the presence of some blood on the inside of the front door of his car. There is no mystery however in the definite physical proof that the left front wheel of defendant's car came in contact with intestate's head, and that such impact could have caused a fractured skull. The testimony of the witness, who saw the intestate's body after such impact, that vapor issued from the intestate's mouth, and also that he was bleeding slightly, cannot be rejected as a matter of law. Viewed in a light most favorable to the plaintiff it would indicate that the intestate was then alive. Hence we think a jury could find on this record that the impact of defendant's car was at least a contributing cause of death.

The judgment should be reversed and a new trial granted.

REYNOLDS, J. (dissenting). In my view the granting of the judgment dismissing plaintiff's complaint on the merits and granting a nonsuit should be affirmed. The difficulty with the plaintiff's case is that two events have been proven, either of which could be a competent producing cause of the death of the plaintiff's intestate. Plaintiff's medical witness testified that the fractured skull which caused the death could have

been caused by the defendant's left wheel striking the head of plaintiff's intestate, while he was prostrate on the pavement. He also testified that this fractured skull could have been caused in the first accident either by plaintiff's intestate being thrown from his vehicle onto the macadam surface of the highway and striking the back of his head, or that plaintiff's intestate's head was caught between his own car and the pavement while rolling over in the road after he had been thrown out. Therefore there were two equally possible causes of death for only one of which the defendant could be responsible. No preference was given one over the other or any greater probability. This does not establish a cause of action. Only by conjecture and speculation could it be said that the evidence tends to establish any responsibility on the part of defendant. Under these circumstances there can be no recovery and there is nothing for the jury to pass on.

In *Cole* v. *Swagler* (308 N. Y. 325, 331), the court says: "It is well settled that where an accident is one which might naturally occur from causes other than a defendant's negligence, the inference of his negligence is not fair and reasonable (*Foltis, Inc.* v. *City of New York,* 278 N. Y. 108, 117; *Galbraith* v. *Busch,* [267 N. Y. 230], *supra,* pp. 233–234; *Tortora* v. *State of New York* [269 N. Y. 167], *supra*). Here it may have been a variety of causes other than Swagler's negligence that led to this accident. Indeed, the cause of the accident remains undisclosed upon this record."

In *Digelormo* v. *Weil* (260 N. Y. 192, 199–200), the court says: "The law is that where the evidence is capable of an interpretation which makes it equally consistent with the absence as with the presence of a wrongful act, that meaning must be ascribed which accords with its absence. In other words, it can only be established by proof of such circumstances as are irreconcilable with any other theory than that the act was done. (*Lopez* v. *Campbell,* 163 N. Y. 340; *Specht* v. *Waterbury Co.,* 208 N. Y. 374; *Ruppert* v. *Brooklyn Heights R. R. Co.,* 154 N. Y. 90.) The rule is well settled that where there are several possible causes of injury, for one or more of which defendant is not responsible, plaintiff cannot recover without proving the injury was sustained wholly or in part by a cause for which the defendant was responsible (*Ruback* v. *McCleary, Wallin & Crouse,* 220 N. Y. 188.) "

In *White* v. *Lehigh Val. R. R. Co.* (220 N. Y. 131, 135–136) the court says: "If the facts are as consistent with the appellant's theory as with the respondent's, the plaintiff should have been nonsuited. It was not sufficient for the plaintiff to show

that a defect might have caused the fall and death, if the circumstances indicate an equal probability that they were due to some other cause. The plaintiff was bound to make out her case by the preponderance of evidence. The jury must not be left to mere conjecture, and a bare possibility that the fall was caused in consequence of the negligence of the defendant is not sufficient. When the precise cause of an accident is left to conjecture and may be as reasonably attributed to a condition for which no liability attaches as to one for which it does, then the plaintiff is not entitled to recover, and the evidence should not be submitted to the jury.''

The judgment should be affirmed, with costs.

BERGAN, GIBSON and HERLIHY, JJ., concur with FOSTER, P. J.; REYNOLDS, J., dissents in an opinion, and votes to affirm.

Judgment reversed and a new trial granted, with costs to the appellant to abide the event.