38

ANN MCGALE, Individually and as Administratrix of the Estate of RAYMOND MCGALE, Deceased, Respondent-Appellant, v METROPOLITAN TRANSPORTATION AUTHORITY et al., Appellants-Respondents, and NEW YORK CITY TRANSIT AUTHORITY et al., Respondents.

METROPOLITAN TRANSPORTATION AUTHORITY et al., Third-Party Plaintiffs-Appellants, v ALLIED MAINTENANCE CORPORATION et al., Third-Party Defendants-Respondents.

First Department, June 24, 1980

## APPEARANCES OF COUNSEL

*Thomas J. Sweeney, III,* of counsel *(John R. Hupper* and *Mark P. Schnapp* with him on the brief; *Griffin, Scully & Sanova; Paul J. Donnelly, Jr.,* and *Cravath, Swaine & Moore,* attorneys), for appellants-respondents and third-party plaintiffs-appellants.

*Thomas Farber* of counsel *(Joseph L. Forstadt* with him on the brief; *Joan Kalech* and *Stroock & Stroock & Lavan,* attorneys), for Union News Company and others, respondents.

*Patricia D'Alvia* of counsel *(Morris, Duffy, Ivone & Jensen,* attorneys), for Allied Maintenance Corporation, third-party defendant-respondent.

*John A. Murray* of counsel *(Helen R. Cassidy,* attorney), for New York City Transit Authority, respondent.

*Norman E. Frowley* of counsel *(Fuchsberg & Fuchsberg,* attorneys), for respondent-appellant.

### OPINION OF THE COURT

Ross, J.

This is an action for damages for the wrongful death and pain and suffering of plaintiff's decedent, Raymond McGale. It is alleged that decedent was beaten and kicked by the individual defendants Romanewicz, Wilomovsky and Cook, Long Island Railway police officers, after the decedent was arrested and handcuffed for disorderly conduct. This action was also brought against the New York City Transit Authority (NYCTA) upon allegations that an off-duty Transit Authority police officer, Donald Harring, was present at, and participated in, the beating. At the close of the case, the trial court dismissed the complaint as against NYCTA and the cross claims of appellants, Metropolitan Transportation Authority (MTA) and Long Island Railroad (LIRR) against said defendant on the ground that the evidence was insufficient to warrant submission to the jury. The court also noted that Officer Harring was off duty at the time of this occurrence and found that he was not acting within the scope of his authority. We agree that the evidence was insufficient to submit the question of NYCTA's liability to the jury and, accordingly conclude that the trial court properly dismissed the action as against NYCTA. We, therefore, do not reach the question whether NYCTA's agent was acting within the scope of his employment.

On January 22, 1970, decedent, after attending a business conference, was departing the city for his suburban home. At the time of his death decedent was 46 years old and was employed in a middle management capacity by an international conglomerate headquartered in New York City. He had been employed by this same corporation for 28 years. At trial decedent's supervisor testified that decedent was in line for a promotion to division head within the near future. Moreover, McGale made his home with his wife and four children in the same community on Long Island for the past 18 years.

At approximately 11:30 that evening McGale entered the Savarin Oyster and Snack Bar, which is located on the Eighth

Avenue side of the LIRR concourse in Pennsylvania Station. This establishment is owned and operated by the Union News Company. Apparently, McGale had been drinking prior to arriving at Pennsylvania Station. After demanding prompt service from a counterman and not receiving such, McGale became abusive and hurled racial epithets at this employee, David Colon. Colon was 5 feet 5 inches to 5 feet 7 inches tall and at the time weighed approximately 145 pounds. Several customers observed decedent's behavior and saw McGale throw paper containers holding mustard and ketchup in the direction of the counterman. According to Robert Myler, a locomotive engineer for Penn Central, Colon leaped over the counter, grabbed decedent's collar and pushed him backwards causing McGale's left shoulder to hit the glass rear wall of the snack bar. This eyewitness observed the ensuing struggle between decedent and the counterman and noticed that the latter's knees were in McGale's chest and stomach area. Myler did not see Colon's knees land on impact with decedent's stomach. As the two combatants rose to their feet, Colon grabbed McGale around the head and began to punch decedent. At this time, Horace Moreno, who was having coffee before beginning his tour of duty as a porter for Allied Maintenance Company, came to the counterman's aid.

At approximately 11:50 P.M., in response to a call for assistance broadcast over the public address system, LIRR police officers Wilomovsky, Romanwicz, Larson and Captain Cook, arrived at the snack bar. The officers noticed that McGale's face was flushed and his clothes were disheveled and stained. After calming McGale, and after the assistant night manager of the restaurant, Jerome Piassa, decided not to press charges, the officers, ascertaining that McGale was a LIRR commuter, escorted him to the stairway above track 18, where he could catch the awaiting 11:58 P.M. train to Long Island.

McGale, however, never boarded this train. A few minutes later he reappeared at the snack bar seeking to continue the prior fight. The police were again summoned. The first officer to arrive, Officer Larson, was instructed by the restaurant's assistant night manager to arrest McGale. As Larson went to grab McGale, the officer injured his knee leaving him immobile. Larson signalled for assistance, whereupon Officer Romanewicz responded. McGale, who at the time of the incident was approximately 5 feet 8 inches to 5 feet 10 inches tall, grabbed Romanewicz who was six feet tall and weighed 238

pounds, in a bear hug and lifted the officer off the ground, tossing him from side to side. At this juncture Officer Wilomovsky arrived at the restaurant accompanied by Donald Harring, an off-duty NYCTA police officer. Harring, dressed in civilian clothes, had completed his shift and was heading home through Pennsylvania Station.

Wilomovsky grabbed McGale's arm as Harring tackled him. This caused McGale to fall forward with Harring and Romanewicz on top of him. McGale continued to resist as the officers struggled to place handcuffs on him. Once McGale was restrained, he was lifted to his feet and was dragged by Officers Romanewicz and Wilomovsky to the LIRR police room located at the Seventh Avenue end of Pennsylvania Station, approximately 300 to 400 feet away from the snack bar. Captain Cook and Officer Harring followed. Romanewicz was the only officer among the four in uniform. Officer Larson remained behind to take the assistant manager and the counterman to the police room.

Decedent continued to struggle throughout. As the group entered the police room Captain Cook grabbed McGale and sat him on the floor, allegedly to prevent injury to the people in that room. Officers Harring and Romanewicz went to a desk behind the entrance door to exchange information.

Two commuters, John McLaughlin and Walter Fox, observed McGale being dragged across Pennsylvania Station. McLaughlin who had concededly consumed a quantity of alcoholic beverages that evening, observed four men, one in uniform, dragging decedent into the police room. As they entered the room the door remained open and McLaughlin, standing 25 feet away, observed decedent being pushed into the room in such a manner that he hit the left side of the wall and fell to the floor. McLaughlin testified that as decedent was falling to the floor, all four men punched and kicked McGale. At trial, however, McLaughlin could only identify Captain Cook and Officer Romanewicz. After the assault which lasted only a brief instant, McLaughlin ran inside to ascertain what was going on. Officer Romanewicz told him it was none of his business, and that if he did not leave the room he would be locked up for obstructing justice.

Fox, the other commuter, who was standing near the door to the police room, heard loud noises and feet scuffling from inside. Fox opened the door three quarters of the way. Glancing to his left, he saw McGale on the floor and in the next

instant saw Officer Romanewicz, who was standing behind the door, kick decedent in the stomach. Captain Cook, who was later promoted to Chief of the LIRR police, escorted the two commuters out of the police room. Once outside, Captain Cook attempted to justify the actions taken and according to Fox, Cook advised them "that nobody should get away with that kind of action and behavior, and that he deserved it [the beating]." Cook admitted having a conversation with the two commuters but asserted that McLaughlin and Fox were unreasonable and causing a disturbance, and claiming police brutality.

When Captain Cook re-entered the police room, he observed that McGale's face was turning blue and had McGale placed on a couch. At this time McGale's hands were still handcuffed. He then directed Officer Romanewicz to place a call to the New York City police to transport a prisoner. Officer Pucillo, in response to this call, arrived at the police room at 12:13 A.M. and saw McGale lying on a couch. A discussion ensued between Pucillo and Captain Cook as to whether an ambulance should be immediately summoned. Cook suggested that McGale be initially taken to the local precinct where an ambulance could be summoned. Pucillo disagreed. He wanted to avoid any interim delay recommending that an ambulance be summoned forthwith. The latter prevailed. Officer Pucillo requested Romanewicz to accompany McGale to the hospital, but Romanewicz refused.

Prior to the arrival of the ambulance, a LIRR police officer, who had just reported for work, applied a heart massage and artificial respiration on two occasions to keep McGale alive. A medical team arrived at approximately 12:35 A.M. and took over. McGale was unconscious when he was removed from the police room. At about 1:00 A.M. McGale was taken to St. Vincent's Hospital, escorted by Officer Pucillo in his radio patrol car. McGale was pronounced dead on arrival at the hospital at 1:15 A.M.

Expert medical testimony was provided by Dr. Michael Baden, then Chief Medical Examiner for the City of New York. Dr. Baden testified that the autopsy revealed a large section of connective tissue in the abdomen, the mesentery, was torn, with two quarts of blood in the abdominal cavity. The internal bleeding from the torn mesentery resulted in death. Dr. Baden testified that the cause of the tear to the mesentery was a blow or kick to the stomach area. It was his

opinion that a knee to the abdomen would not usually cause such a laceration of the mesentery, thus ruling out, in his opinion, that the fatal injury had been inflicted during the fight at the snack bar. He also stated it was unlikely that a person with this injury could lift another individual weighing 238 pounds.

Appellants, at trial, attempted to demonstrate to the contrary that the fatal injury occurred not in the police room but during the altercation at the snack bar. To this end, Dr. Alfred Angrist, a professor of pathology, testified that the mesentery could be ruptured by a blunt force such as a fist, knee, head or shoe and that such a rupture could occur hours or days before death.

The individual defendants each testified that they did not kick or punch decedent nor did they observe anyone else engage in such conduct.

After the close of the case, the trial court dismissed the complaint against New York City Transit Authority, and also dismissed the third-party action by Metropolitan Transportation Authority and Long Island Railroad against Allied Maintenance and its employee Moreno and Metropolitan Transportation Authority's and Long Island Railroad's cross claims against Piassa, Colon and New York City Transit Authority. Plaintiff discontinued the action against the Union News Company, Piassa and Colon during the trial and the action as against the City of New York was discontinued prior to trial.

The jury rendered a verdict finding the corporate defendants-appellants, MTA and LIRR, and the individual defendants, Wilomovsky, Romanewicz and Cook, jointly and severally liable to plaintiff for the wrongful death of plaintiff's husband, awarding to plaintiff the total sum of $3,330,000 representing recovery for the pecuniary injury resulting from decedent's death, loss of consortium and conscious pain and suffering. Following the verdict appellants moved for an order directing a new trial on liability and damages. The Trial Justice granted the motion only to the extent of directing a new trial on damages unless plaintiff consented to reduce the damages awarded to $1,000,000 for wrongful death, $75,000 for conscious pain and suffering and $350,000 for the loss of consortium. Plaintiff stipulated to this reduction. Appellants challenge on appeal the reduced verdict. In addition, the corporate appellants, MTA and LIRR, appeal as third-party plaintiffs from so much of the judgment as dismissed their

cross claims against NYCTA, and the third-party claim against Allied Maintenance and its employee. We modify only to the extent of vacating the award for loss of consortium.

Plaintiff cross-appeals from so much of the judgment as established interest against MTA, LIRR and the individual defendants at the rate of 4% contending that interest should be computed at the rate of 6% from the date of death to entry of judgment.

Appellants strenuously argue that the court erred in dismissing the complaint as against NYCTA and the MTA and LIRR's cross claims against that defendant.* At the close of all the evidence the trial court held that it did not "believe there has been sufficient causal relationship established between anything [Officer Harring] did and the injuries complained of." Appellants maintain that this issue should have been submitted to the jury. Alternatively, they urge that if there was no causal relationship between Harring's conduct and decedent's death, there necessarily could not have been a causal relationship between the acts of the LIRR officers and the death since an eyewitness testified that he observed four persons participating in the assault. Therefore, the argument continues, since all four must share responsibility, the dismissal of the actions against NYCTA without also dismissing the claims against appellants prejudiced the jury. We disagree.

Competent medical testimony established that the probable cause of McGale's death was the defendant Romanewicz' kick to decedent's abdomen while McGale had his arms restrained behind his back. McLaughlin observed a total of four men, with only one in uniform, "escorting" McGale through the terminal. Once this group arrived at its destination, the assault by all began. However, McLaughlin could only identify certain officers employed by LIRR and could not single out the Transit Authority officer as being a participant. Fox, on the other hand, observed six or seven men accompanying decedent. Fox clearly attributed the assaultive conduct to defendant Romanewicz. NYCTA Officer Harring was present in this sanctuary for a brief span of time to obtain the details of McGale's arrest. While there he was struck in the back by the door when it was opened to permit the counterman and assistant night manager to enter. Thus, an individual observ-

---

* NYCTA's agent, Officer Harring, was not a named defendant.

ing this sequence of events could determine that six men were escorting decedent. Harring quickly departed and his subsequent notification to transit headquarters was made from a location in Pennsylvania Station one flight above the police room.

▮ Additional medical evidence established that if an individual sustained a 6-inch tear in the mesentery, he would not have been capable of lifting and tossing from side to side a 6 foot, 238-pound man. The competent proof of causation leads to the inescapable conclusion, as reached by the trial court, that McGale's demise can only be ascribed to the violent conduct of defendant Romanewicz and other agents of LIRR. "The rule is well settled that where there are several possible causes of injury, for one or more of which defendant is not responsible, plaintiff cannot recover without proving the injury was sustained wholly or in part by a cause for which the defendant was responsible" (Digelormo v Weil, 260 NY 192, 200). Here, the negligence complained of and the subsequent injury and death resulted not from the actions of NYCTA and its agent, but rather was causally related to appellants' conduct. No competent evidence was adduced to connect Harring with the death. Thus, we are in agreement that the trial court correctly dismissed the action as against NYCTA.

▮ Appellants' attempt to prove that the fatal injury occurred during the initial fight at the restaurant is equally infirm. The jury verdict, finding that the fatal injury was sustained in the police room is supported by a preponderance of the evidence. There was eyewitness testimony that the fatal beating occurred in the police room and there was competent medical proof to substantiate this claim. Although there was contradictory medical evidence as to whether the incident in the snack bar could have been the cause of death, the jury declined to credit this expert proof, accepting as more probable that the fatal injury was inflicted by the officer in the police room. Clearly the jury's verdict was not against the weight of the credible evidence. Nor was sufficient evidence adduced to show that the acts of the Union News Company, the owner of the snack bar, or its employees had any causal relationship to the alleged wrongful act.

▮ Turning now to the question of damages, we find that the award must be modified to the extent of vacating the award for loss of consortium. The Court of Appeals has recently settled the law on this subject. (See Ventura v Consol-

*idated Edison Co.,* 49 NY2d 622.) In *Ventura,* the court held (p 634) that: "the Legislature, by including the pecuniary injury limitation in its statutory scheme [EPTL 5-4.3], clearly intended that damages for loss of consortium should not be recoverable in wrongful death actions. The courts, under such circumstances, are not free to consider the relative merits of the arguments in favor of, or in opposition to, this limitation for the Legislature has 'struck the balance for us'." Although the court characterized the argument to include loss of consortium in a wrongful death claim as "attractive" the court, nevertheless, declined the invitation "to recognize a common-law cause of action on behalf of the surviving spouse for permanent loss of consortium due to the wrongful death of his or her marital partner." *(Ventura v Consolidated Edison Co., supra,* p 633.) This decision can leave no lingering doubt that the inclusion of a claim for loss of consortium in a wrongful death action is proscribed.

■ On the cross appeal, plaintiff assigns error to the trial court's determination fixing interest against appellants at 4% since section 1276 of the Public Authorities Law provides for a 4% interest rate only as to judgments. Plaintiff concludes that a 6% rate should apply for the period between the death and entry of judgment. We disagree. Clearly under applicable statutes MTA and LIRR are public benefit corporations (Public Authorities Law, § 1263, subd 1). The interest rate that can be assessed against these corporations, and all other public corporations, has been restricted by the Legislature (L 1939, ch 585). This statute prescribes a 4% interest rate to be paid by public corporations on "accrued claims and judgments". No void exists, as plaintiff argues, between this latter statute and the Public Authorities Law. An appropriate construction of these statutes indicates that the Legislature, in referring to "judgment" in section 1276 of the Public Authorities Law contemplated that "accrued claims" under chapter 585 of the Laws of 1939, bear a 4% rate of interest on wrongful death claims between the date of death and entry of final judgment.

We have carefully reviewed all other claims raised by the parties on this appeal and have found each to be without merit.

Accordingly, the judgment of Supreme Court, New York County (NUSBAUM, J.) entered on December 11, 1978 which, *inter alia,* awarded damages to the plaintiff in the total sum of $1,425,000 together with interest and costs, should be modi-

fied, on the law, to the extent of vacating the damages for loss of consortium, and otherwise affirmed, without costs and without disbursements.

KUPFERMAN, J. P., BIRNS, SANDLER and MARKEWICH, JJ., concur.

Judgment, Supreme Court, New York County, entered on December 11, 1978, modified, on the law, to the extent of vacating the award of damages for loss of consortium, and otherwise affirmed, without costs and without disbursements.