Elizabeth **PRUNIER**, as permanent guardian of Sean M. McDermott, Plaintiff–Appellant,

v.

**CITY OF WATERTOWN,** Defendant–Appellee.

No. 1413, Docket 91–7026.

United States Court of Appeals, Second Circuit.

Argued April 30, 1991.

Decided June 17, 1991.

Carolyn R. Friedman, Syracuse, N.Y. (Birnbaum McDermott & Friedman, Syracuse, N.Y., of counsel), for plaintiff-appellant.

George H. Lowe, Syracuse, N.Y. (Robert J. Slye, Robert H. Kirchner, Bond, Schoeneck & King, Syracuse, N.Y., of counsel), for defendant-appellee.

Before OAKES, Chief Judge, WINTER, Circuit Judge, and PATTERSON, District Judge.*

**WINTER, Circuit Judge:**

Plaintiff Elizabeth Prunier, as guardian for Sean McDermott, appeals from a grant of summary judgment in favor of the defendant City of Watertown. The district court ruled that Prunier lacked sufficient evidence to allow a reasonable jury to find that defendant's negligence was the proximate cause of McDermott's injuries. We reverse and remand.

## BACKGROUND

On September 27, 1986, McDermott, a Second Lieutenant in the Army, attended a party with his platoon at Thompson Park, a 355–acre municipal park owned and operated by the City of Watertown. McDermott and his friends spent the day talking, drinking and playing football. Near the end of the afternoon, a boy named Paul Priest approached the group on a bicycle and asked if he could have their empty beer cans. Someone in McDermott's group asked if he could ride Priest's bicycle. The bicycle had a men's racing-style frame, upside-down front handlebars, no rear brake, a weak front brake, and a shredded front tire. A member of the group, Gary Roberts, rode the bike around the picnic table where the group was sitting. Another member of the group then rode the bike briefly.

McDermott then got on the bike and rode down North Outlook Walk, a paved path in Thompson Park. About fifteen minutes later, Priest asked for his bicycle. McDermott was nowhere in sight. Roberts and two other members of the group, Terrance Martin and Steve Warden, walked down North Outlook Walk in search of McDermott. They found McDermott lying at the bottom of a flight of steps that are part of North Outlook Walk. At their depositions, Martin, Roberts and Warden testified that as they approached the stairway on North Outlook Walk, they could not see the stairs until they were very close to them.

* The Honorable Robert P. Patterson, Jr., of the United States District Court for the Southern District of New York, sitting by designation.

McDermott's injuries are severe. He suffers from amnesia and is unable to remember anything about a period covering more than a year, including the date of his accident. He is not expected ever to be able to recall the incident. A blood alcohol test given upon McDermott's admission to the hospital found that he had a blood alcohol level of 0.29 percent.

In November 1987, Prunier, having been appointed guardian for McDermott, commenced the present action. The complaint alleged, *inter alia,* that McDermott's injuries were caused by the negligence of the City in failing to warn of the existence of the steps and in inadequately designing, maintaining, inspecting or repairing the steps. After discovery, the City moved for summary judgment. At the conclusion of argument on the City's motion, the court granted the City's motion. The record before the court included a variety of affidavits, medical records, and deposition testimony. Judge McAvoy concluded from these materials that Prunier had not produced sufficient evidence to allow a reasonable jury to find that the City's alleged negligence was the proximate cause of the accident. The present appeal followed.

### DISCUSSION

We review the district court's grant of summary judgment *de novo, see Burtnieks v. City of New York,* 716 F.2d 982, 985 (2d Cir.1983), under the familiar standard that the evidence and inferences to be drawn from that evidence must be viewed in the light most favorable to the party opposing the motion, *see United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Poller v. Columbia Broadcasting Sys.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Bailey v. Hartford Fire Ins. Co.,* 565 F.2d 826 (2d Cir.1977).

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c). To defeat a motion for summary judgment in an ordinary civil case, a plaintiff must present evidence based on which "reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Summary judgment will be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ Under New York law, Prunier must prove that the City's negligence was a substantial contributing factor in producing McDermott's injuries. *Kush v. City of Buffalo,* 59 N.Y.2d 26, 32–33, 462 N.Y.S.2d 831, 835, 449 N.E.2d 725, 729 (1983); *Derdiarian v. Felix Contracting Corp.,* 51 N.Y.2d 308, 314–15, 434 N.Y.S.2d 166, 169, 414 N.E.2d 666, 669 (1980). She need not prove, however, that the defendant's conduct was the sole cause of the injuries. *See Digelormo v. Weil,* 260 N.Y. 192, 200, 183 N.E. 360 (1932).

In the City's view, the undisputed facts are:

> McDermott got on a bicycle which had a flat, shredded front tire, no rear brakes and a slow front brake; rode around a nearby picnic table several times; rode down a slightly descending and curving path; and was found, in critical condition, at the bottom of a flight of stairs several minutes later.

Brief of Appellee at 17. Although the City concedes that "it is possible to speculate or surmise from these facts that, due to the City's alleged negligence, McDermott was unable to see the stairs in time to stop," it maintains that "a jury could not reasonably or logically reach such a conclusion because, *from these limited facts,* there are numerous other scenarios which reasonably and equally could have occurred." *Id.*

■ To be sure, a jury may not base its verdict on mere speculation, surmise or guesswork. *See Bernstein v. City of New York*, 69 N.Y.2d 1020, 1021–22, 517 N.Y. S.2d 908, 909, 511 N.E.2d 52, 53 (1987). Where "the evidence ... is capable of an interpretation equally consistent with the presence or absence of a wrongful act, that meaning must be ascribed which accords with its absence." *Lahr v. Tirrill*, 274 N.Y. 112, 117, 8 N.E.2d 298 (1937); *see also Bernstein*, 69 N.Y.2d at 1021–22, 517 N.Y. S.2d at 909, 511 N.E.2d at 53 (where evidence shows " 'several possible causes of an injury, for one or more of which the defendant was not responsible, and it is just as reasonable and probable that the injury was the result of one cause as the other, plaintiff cannot have a recovery since he has failed to prove that the negligence of the defendant caused the injury' ") (quoting *Ingersoll v. Liberty Bank*, 278 N.Y. 1, 7, 14 N.E.2d 828 (1938)).

■ However, a jury verdict finding that the City's negligence was a substantial cause of McDermott's injuries would be based on more than speculation, surmise or guesswork. There was no sign warning cyclists that the paved path was interrupted by stairs. Moreover, deposition testimony indicated that a cyclist would have little or no warning of the stairs. For example, Gary Roberts testified that an overhanging bush obscured the view of the steps from the walkway and that the steps were visible only at a distance of five feet. Charles Williams testified that the bush and a curve in the walkway made it difficult to see the stairs until immediately before reaching them. William Williams also testified that the curve and vegetation made it impossible to see the stairs from a distance of greater than five feet. Other witnesses testified similarly. There was evidence, therefore, that a bike-rider traveling faster than the witnesses, who approached the stairs on foot, would have had insufficient warning of the peril posed by the stairs. Based on that evidence, a rational trier could find that the lack of warning caused McDermott's injuries.

The City argues that numerous other "scenarios" are as likely explanations of the circumstances of McDermott's accident as the City's failure to warn cyclists of the hidden danger posed by the stairway. However, the City's alternative explanations, considered singly or in combination, are not so likely as to preclude a jury from reasonably concluding that the lack of warning signs was a substantial cause of McDermott's accident. According to the City, the possible causes of McDermott's injuries include:

> he saw the steps and tried to ride down them or jump them; he saw the steps, dismounted the bike, and slipped and fell while trying to walk the bike down the steps; he saw the steps in advance, but was unable to stop because he had no brakes and a flat front tire; and he was mugged or pushed down the steps.

Brief of Appellee at 17. We may quickly reject the mugging scenario as baseless speculation. As to the possibility that McDermott intentionally rode down the steps or slipped and fell while trying to walk the bike down the steps, there is no evidence in the record to support either scenario, other than evidence that McDermott was intoxicated at the time of the accident. However, the extent to which his intoxication may have contributed to the accident should be resolved by a trier of fact after weighing evidence of that intoxication in light of evidence of the dangerous condition. If the trier concludes that the intoxication was the sole cause of the accident, then the City would of course prevail. Otherwise, the intoxication would be solely a matter of comparative negligence. *See* N.Y. CPLR § 1411 (McKinney Supp.1991). Turning to the bike's numerous deficiencies, the record would support a finding that McDermott was unable to stop in time because of the admittedly imperfect condition of the bicycle he was riding. However, such a finding would be made only after resolving in defendant's favor the factual dispute over whether McDermott could have seen the stairs in time to stop even if the bike were in perfect condition.

Accordingly, we reverse the grant of summary judgment and remand to the district court for further proceedings.[1]

---

1. We decline to address the City's arguments that McDermott's suit is barred for reasons not relied upon by the district court.